FILED _____ LODGED
_____ RECEIVED

AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

**November 30, 2020**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY_____ DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
14414 Greenbelt Dr E Sumner, Washington 98390, as more fully described in Attachment A

)
)
)
)
)
)

Case No.   MJ20-5274

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

14414 Greenbelt Dr E Sumner, Washington 98390, more fully described in Attachment A, incorporated herein by reference.

located in the _____ Western _____ District of _____ Washington _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC §§ 841, 843, 846 and 18 USC §§ 1956, 924(c) | Distribution and Manufacturing of Controlled Substances and Conspiracy Unlawful Use of a Communication Facility to Facilitate the Distribution of Controlled Substances |

The application is based on these facts:

✓   See Affidavit of Katelyn Mitchell, continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____
*Applicant's signature*

Katelyn Mitchell, United States Postal Inspector
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 11/30/2020 _____

_____
*Judge's signature*

City and state:  Tacoma, Washington

David W. Christel, United States Magistrate Judge
*Printed name and title*

## Attachment A

## Property To Be Searched

This warrant authorizes the search of the following location where the Items to Be Seized, listed in Attachment B, could be found.

This includes all areas within and surrounding the structure described above, including all rooms, stalls, crawlspaces, basements, storage areas, cupboards, containers, surrounding grounds, garages, carports, trash areas/containers, secure locations (such as safes), vehicles, persons and phones located in or on the premises.

For vehicles to be searched, this includes all areas of the vehicle, all compartments and all containers within that vehicle, whether locked or not.

**Target Residence: 14414 Greenbelt Dr E Sumner, Washington 98390**

**Physical Description:** 14414 Greenbelt Dr. E Sumner, Washington is a single family, single story mobile home on the west side of Greenbelt Dr. E. The driveway to the residence is located on the south side of the property and the yard is bordered by tall bushes. A mailbox positioned on the street outside the residence reads "14414."





## Attachment B

## Items to be Seized

Evidence and/or fruits of the commission of the following crimes:  distribution and manufacturing of controlled substances, in violation of 21 U.S.C. § 841(a)(1),  unlawful use of a communication facility, including USPS and UPS, to facilitate the distribution of controlled substances, in violation of 21 U.S.C. § 843(b), conspiracy to commit these offenses in violation of 21 U.S.C. § 846, money laundering, in violation of 18 U.S.C. § 1956; and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), as described below.

1.      Any controlled substances, including but not limited to growing and processed marijuana, cocaine, crack cocaine, heroin, hashish, methamphetamine, MDMA, methadone, oxycodone, Oxycontin, and fentanyl;

2.      Drug Paraphernalia:  Items used, or likely to be used, to cultivate, store, process, package, use/consume, and/or distribute controlled substances, such as lights, soil, fertilizer, fans, plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items.

3.      Shipping Records and Supplies:  USPS, UPS, FedEx, freight companies, and any other documents and packaging materials, including boxes and crates, packing tape, shipping labels, invoices, mylar and similar bags, heat and/or vacuum sealing devices, packing straps, packing peanuts, or bubble wrap.

4.      Drug Transaction Records:  Documents such as ledgers, receipts, notes, invoices, and similar items relating to the acquisition, transportation, production, and distribution of controlled substances.

5.      Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items.

6.      Currency and Financial Records:  U.S. Currency, money orders, gift cards, and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; and other records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, and similar items, and money counters.

7.      Photographs/Surveillance:  Photographs, video tapes, digital cameras, surveillance cameras and associated hardware/storage devices, and similar items, depicting property occupants, friends and relatives of the property occupants, or suspected growers or buyers or sellers of controlled substances, controlled substances or other contraband, weapons, assets

derived from the distribution of controlled substances, and photographs of any documents or other items listed elsewhere in this Attachment.

8.      Weapons:  Including but not limited to firearms, magazines, ammunition, and body armor.

9.      Codes and Passwords:  Evidence of codes used in the distribution of controlled substances, including but not limited to passwords for cell phones and bank accounts.

10.     Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the past, present or future intended purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other properties.

11.     Indicia of occupancy, residency, and/or ownership of assets including, but not limited to, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents establishing ownership or occupancy.

12.     Evidence of Storage Unit Rental or Access:  rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords or other documents relating to storage units.

13.     Evidence of Personal Property Ownership:  Registration information, ownership documents, receipts, or other evidence of ownership of property including vessels, boats, airplanes, jet skis, all terrain vehicles, RVs, jewelry, clothes, and personal property; evidence of international or domestic travel, hotel/motel stays, and any other evidence of unexplained wealth.

14.     Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

a.      Employment records:  employee lists, paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, contracts, dividends, stock certificates, and compensation.

b.      Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.      Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

d.      Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

e.      Collection accounts:  statements and other records.

f.      Certificates of deposit:  applications, purchase documents, and statements of accounts.

g.      Credit card accounts:  credit cards, monthly statements, and receipts of use.

h. Receipts and records related to gambling wins and losses, or any other contest winnings.

i. Insurance: policies, statements, bills, and claim-related documents.

j. Financial records: profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

k. Licenses: professional licenses, application materials, certifications, guidance, regulations, and similar materials.

l. Contracts: contracts in final or draft form.

m. Correspondence, memoranda, and notes: correspondence, memoranda, and notes with or related to business associates, government authorities, law enforcement, employees, customers, clients, vendors, lenders, creditors, banks, escrow companies, title companies, business plans, projects, real estate agents, lenders, and other associates.

15. All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

16. All Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, These documents are to include applications, payment records, money orders, frequent customer cards, etc.

17. Negotiable instruments, jewelry, precious metals, financial instruments, stored value/prepaid cards, receipts for the purchases and expenditures made on stored value/prepaid cards, and other negotiable instruments.

18. Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

19. Correspondence, papers, records, and any other items showing employment or lack of employment.

20. Telephone books, and/or address books, facsimile machines to include the carbon roll and/or other memory system, any papers reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists. Also, telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

21.     Vehicles, safes, and locked storage containers found at the target locations that are capable of storing the items to be seized set forth in this Attachment, and the contents thereof that are otherwise described in this document. The authorization granted by this warrant applies to vehicles parked or stopped in the garage, driveway, or other area on or in the target locations but does not extend to vehicles parked or stopped on the street.

22.     Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

23.     Tools:  Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close compartments.

24.     Cell Phones: Cellular telephones and other communications devices may be seized but not searched unless approval to do so is obtained via a follow-up warrant.

**AFFIDAVIT OF KATELYN MITCHELL**

STATE OF WASHINGTON )

)    ss

COUNTY OF PIERCE )

I, Katelyn R. Mitchell, a Postal Inspector with the United States Postal Inspection Service, having been duly sworn, state as follows:

**AFFIANT BACKGROUND**

1.    I am a United States Postal Inspector, assigned to investigate the unlawful transportation of contraband, including Title 21 controlled substances, through the United States Mail. I have been employed as a Postal Inspector since April 2016 and am currently assigned to Seattle Division Headquarters, located in Seattle, Washington. Prior to becoming a U.S. Postal Inspector, I earned a Bachelor's Degree in Political Science from Washington State University and a Master's Degree in Criminal Justice from Seattle University. As part of my duties, I investigate the use of the United States Postal Service (USPS) to illegally send and receive controlled substances, the proceeds of drug trafficking, and instrumentalities associated with drug trafficking, in violation of Title 21, United States Code, Sections 841(a)(1) (distribution and possession with intent to distribute controlled substances), and 843(b) (unlawful use of a communication facility, including USPS, to facilitate the distribution of controlled substances). I have completed USPIS Basic Inspector Training in Potomac, Maryland, and received specialized training in the investigation of controlled substances in the United States mails. I have also received training on the identification of controlled substances, and the interdiction of controlled substances and proceeds thereof. During my course of employment as a Postal Inspector, I have conducted and/or assisted with the investigation and seizure of more than 2000 USPS parcels containing controlled substances and/or proceeds thereof. In addition, through my experience and training and that of more senior federal, state and local drug investigators I have become familiar with the various techniques by which controlled substances are manufactured,

AFFIDAVIT OF INSPECTOR MITCHELL - 1
USAO 2018R00964

transported, distributed, and sold; and the efforts of persons engaged in the manufacture, transportation and distribution of controlled substances to avoid detection and apprehension by law enforcement officers.

2.      Because of my personal participation in this investigation and because of information provided to me by other agents and officers, I am familiar with the facts and circumstances of this investigation.  My experience in investigating drug offenders, my education, my conversations with senior drug agents, and my specialized training formed the basis of opinions and conclusions set forth below.

**INTRODUCTION AND PURPOSE OF AFFIDAVIT**

3.      As described herein, there is probable cause to believe that the following offenses have been committed, and are being committed, by Wei Quan WU and others identified throughout this affidavit: Distribution and Manufacturing of Controlled Substances, in violation of 21 U.S.C. § 841(a) (1); Unlawful Use of a Communication Facility to Facilitate the Distribution of Controlled Substances, in violation of 21 U.S.C. § 843(b); Conspiracy to commit these offenses in violation of 21 U.S.C. § 846; Money Laundering, in violation of 18 U.S.C. § 1956;

4.      This Affidavit is submitted in support of applications for a search and seizure warrant for the residence of 14414 Greenbelt Dr. E., Sumner[1], Washington, hereafter referred to as the "**Target Residence 28,**" as more fully described in Attachment A.

5.      As set forth below, there is probable cause to believe that Wei Quan WU and others unknown are using **Target Residence 28** to further the following offenses: Manufacture, Distribution and Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. § 841(a) (1); Unlawful Use of a Communication

---

[1] Some sources indicate that this residence is within the Bonney Lake, Washington jurisdiction and others indicate that the residence falls under the jurisdiction of Sumner, Washington. For the purposes of this Affidavit, I have relied upon documents filed with the Pierce County Assessor's Office, which list the address as 14414 Greenbelt Dr. E, Sumner, Washington.

AFFIDAVIT OF INSPECTOR MITCHELL - 2
USAO 2018R00964

Facility to Facilitate the Distribution of Controlled Substances, in violation of 21 U.S.C. § 843(b); conspiracy to commit these offenses, in violation of 21 U.S.C. § 846; and Money Laundering, in violation of 18 U.S.C. § 1956.

6.      Further, there is probable cause to believe that the search of **Target Residence 28** will lead to evidence, fruits, and instrumentalities of the aforementioned crimes as well as to the identification of individuals who are engaged in the commission of those and related crimes.

## SOURCES OF INFORMATION

7.      I am familiar with the facts set forth in this affidavit based on my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and from records, documents, and other evidence obtained during this investigation.  When I refer to registration records for vehicles, I am relying on records obtained from the Washington State. Insofar as I have included event times in this affidavit, those event times are approximate.  Insofar as I have identified individuals in this affidavit, those identifications are made in good faith based on comparisons with Washington State DOL photos, physical and electronic surveillance.

8.      Because this affidavit is being submitted for the limited purpose of obtaining a warrant to search **Target Residence 28**, have not included every fact known to me concerning this investigation.  Rather, I have set forth only the facts that I believe are necessary to show that there is probable cause to issue the requested warrant.

## SUMMARY OF PROBABLE CAUSE

### Background of the Investigation

9.      Since 2017, U.S. Postal Inspectors in multiple jurisdictions around the country, as well as King County Sheriff's Office (KCSO) Detectives, have been investigating several illegal and unlicensed clandestine marijuana grow operations managed by a large Drug Trafficking Organization (DTO) responsible for cultivating and shipping large quantities of bulk marijuana throughout the United States. Members of the DTO were initially identified in the greater Seattle and Chicago areas shipping and/or

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   receiving suspected marijuana packages through USPS and bulk freight shipping

2   companies. Extensive law enforcement action in Washington, Oregon, Illinois, Texas,

3   and Pennsylvania has not deterred the organization from continuing their criminal

4   enterprise.

5        10.      Investigators believe that DTO members grow marijuana in suburban

6   houses in the greater Seattle area and elsewhere. Some of the members then collect

7   marijuana at "stash" or "shipping" houses where they package it, often in vacuum sealed

8   bags placed in wooden boxes that are then put in cardboard boxes for shipment. The

9   boxes are generally similar in size, shape, and weight; have similar tape and printed

10  labels; and are bound with heavy black plastic banding and metal seals to prevent

11  tampering. Investigators believe that each box typically contains between 32 and 36

12  pounds of marijuana stored in heat-sealed bags accompanied by dryer sheets. DTO

13  members then deliver these boxes to freight shipping companies in Seattle, Washington;

14  Portland, Oregon; and San Francisco, California.  From there, the boxes of suspected

15  marijuana have been shipped out of state unlawfully, primarily to Illinois, but also to

16  New York, New Jersey, Kentucky, Pennsylvania, Massachusetts, Connecticut, Georgia,

17  Missouri, and Texas.

18       11.      Investigators believe that the DTO produces and ships marijuana in this

19  way to take advantage of differences in marijuana prices in different states. In general,

20  members of the DTO arrange and fund the shipment of bulk freight marijuana from states

21  with more permissive marijuana laws to other states with more heavily enforced criminal

22  laws prohibiting the sale of marijuana. For example, Washington State, in contrast to

23  other states, has implemented a system of regulations that allows for the cultivation and

24  sale of marijuana under certain circumstances. This makes the price of marijuana in

25  Washington State lower than the price of marijuana in other states where criminal laws

26  prohibiting the distribution or use of marijuana are more heavily enforced. This price

27  disparity leads to a black market for marijuana, including in Washington State where

28  unregistered or illegal marijuana is bought and sold for subsequent shipment to other

AFFIDAVIT OF INSPECTOR MITCHELL - 4
USAO 2018R00964

states. Based on my training and experience, I know that the black market street value of marijuana in Washington State is approximately $1,000 per pound. Based on my training and experience, I also am aware that the value of marijuana in states where authorities enforce laws criminalizing the recreational use and trafficking of marijuana is approximately $3,000 per pound. This imbalance presents the opportunity for individuals illegally cultivating marijuana (or legally cultivating under Washington State law, but diverting to the black market) to turn a tremendous profit if they can successfully smuggle their drugs from Washington to certain other states. Investigators believe that the targets in this investigation are taking advantage of this price difference by producing marijuana in Washington State and shipping it to other states.

12.     On October 20, 2020, and October 21, 2020, U.S. Postal Inspectors obtained numerous search warrants for locations identified during this investigation. Those warrants were executed on October 21, 2020 and October 22, 2020, leading to the seizure of over 13,000 marijuana plants, over 1,000 pounds of processed marijuana, and over $1,800,000 in U.S. Currency. As detailed below, evidence related to **Target Residence 28** was recovered at one of the sites associated with Wei Quan WU which was searched on October 21, 2020.

13.     On October 14, 2020, a Grand Jury sitting in the Western District of Washington returned an indictment charging Wei Quan WU with Conspiracy to Manufacture and Distribute Marijuana, as well as other crimes committed in furtherance of that conspiracy. A federal arrest warrant remains outstanding for Wei Quan WU.

### History of Wei Quan WU & Target Residence 28

14.     Wei Quan WU was identified by investigators in early 2018 as an individual involved with the DTO described above who was traveling to, and believed to be managing, multiple clandestine marijuana grow operations in Western Washington.

15.     From February 2018 through April 2018, a large amount of U.S. Currency, 7600 marijuana plants, and over 700 pounds of processed marijuana were seized by the King County Sheriff's Department when officers searched approximately 23 locations.

AFFIDAVIT OF INSPECTOR MITCHELL - 5
USAO 2018R00964

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    Among those locations were private residences and storage units frequented by and/or

2    otherwise associated with Wei Quan WU, as established through surveillance and records

3    recovered during the earliest of these searches on February 27 and February 28, 2018. As

4    described in greater detail below, Target Residence 28 was searched during the course of

5    this initial investigation and found to contain an illegal marijuana grow operation.

6         16.    During the course of the investigation, Detective Przygocki learned that

7    Wei Quan WU drove a white Land Rover, a Ford Pickup Truck, and a gray Toyota

8    Sienna minivan bearing Washington license plate AOA5032, to conduct his work

9    managing the cultivation and trafficking of marijuana from multiple residential locations.

10   On multiple occasions during the course of his late 2017, early 2018 investigation,

11   Detective Przygocki observed Wei Quan WU's Land Rover travel to a residence located

12   at 2115 NE 8th St., Renton, Washington during what appeared to be his route checking on

13   other marijuana grow operations he was overseeing. That residence was searched on

14   February 27, 2020 and found to contain a packaging assembly area for several large

15   wood crate and cardboard boxes as well as approximately 15 pounds of processed,

16   vacuum-sealed marijuana packaged for distribution.[2]

17        17.    Based on my training and experience, I believe that Wei Quan WU's

18   association with this residence and the individuals living there indicates that he has been

19   involved with the cultivation and trafficking of marijuana since at least the early months

20   of 2018. Wei Quan WU's Land Rover was seized by law enforcement subsequent to the

21   King County search warrant executions in February 2018. Since that time, through

22   September, 2020, investigators have seen Wei Quan WU primarily driving the gray

23

24

_____

25   [2] On October 14, 2020, the individuals identified as residents of 2115 NE 8th St., Renton, Wobiao LEI and Xinming

26   WU, were charged by a Grand Jury in the Western District of Washington with Conspiracy to Manufacture and
     Distribute Marijuana, as well as other crimes committed in furtherance of that conspiracy. Since 2018, investigators

27   have seen Wei Quan WU meeting with Wobiao LEI on at least one occasion at a Chinese restaurant in Renton,
     Washington. Investigators have also seen Wobiao LEI's vehicle, a black Range Rover bearing Washington license

28   plate BNF4424 parked outside of Wei Quan WU's residence at 12242 64th Ave. S., Seattle, Washington.

AFFIDAVIT OF INSPECTOR MITCHELL - 6
USAO 2018R00964

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  Toyota Sienna minivan bearing Washington license plate AOA5032, which is registered

2  to his wife at their residence, 12442 64th Ave. S., Seattle, Washington.

3      18.    Wei Quan WU's residence, 12442 64th Ave. S., Seattle, Washington, was

4  also searched in February 2018. Inside Wei Quan WU's residence, investigators located a

5  safe in the downstairs area of the residence which was found to contain approximately 17

6  spiral notebooks with numbers that appeared to correlate with residences confirmed or

7  suspected to contain marijuana grows. Among the numbers written on individual

8  notebooks, the following match the house numbers of residences later confirmed to

9  contain clandestine marijuana grows, including **Target Residence 28:**

| Numbers on Wei Quan WU Notebook Covers: | Corresponding Residential Properties: |
|---|---|
| 14323 | 14323 215th Ave E., Bonney Lake, Washington 98391 |
| 558 | 558 Hoquiam Ave. NE, Renton, Washington 98059 |
| 11625 | 11625 SE 163rd St., Renton, Washington 98058 |
| 14310 | 14310 176th Ave. SE, Renton, Washington 98059 |
| 30521 | 30521 2nd Ave. SW, Federal Way, Washington 98023 |
| 21016 | 21016 98th Ave S., Kent, Washington 98031 |
| **14414** | **14414 Greenbelt Dr. E., Sumner, Washington 98391 (Target Residence 28)** |

18      19.    Wei Quan WU's safe was also found to contain power bills for several of

19  the residences listed above, in the name(s) of various other individuals as well as assorted

20  receipts from "Rain City Hydro." I know through my training and experience

21  investigating clandestine marijuana grow operations that Rain City Hydro (now closed)

22  was an indoor garden and hydroponics store which carried nearly all the supplies

23  necessary to initiate and maintain large marijuana grow operations including specialized

24  lighting, sophisticated electrical equipment, chemical fertilizers and soil.

25      20.    The 17 Notebooks (later transcribed to English) detailed costs/profits at

26  each marijuana grow, including how much Wei Quan WU was making per pound, how

27  much he spent in bills (energy, food, misc.) and how much he and other charged and

28  uncharged co-conspirators were profiting at each residence.

AFFIDAVIT OF INSPECTOR MITCHELL - 7
USAO 2018R00964

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

21.     As detailed in the above chart, in February, March, and April 2018, KCSO detectives served King County Superior Court search warrants at residences with house numbers corresponding with Wei Quan WU's notebooks, including 14323 215th Ave E., Bonney Lake, WA 98391, 558 Hoquiam Ave. NE, Renton, WA 98059, 11625 SE 163rd St., Renton, WA 98058, 14310 176th Ave. SE, Renton, WA 98059, 30521 2nd Ave. SW, Federal Way, WA 98023, 21016 98th Ave S., Kent, WA 98031, as well as **Target Residence 28** (**14414** Greenbelt Dr. E., Sumner, WA 98391), and found each of these residences to contain clandestine marijuana grow operations. Specifically, **Target Residence** 28was searched by KCSO detectives on March 12, 2018, and was found to contain approximately 244 marijuana plants and approximately .6 pounds of processed marijuana. Investigators believe that Wei Quan WU was managing and profiting from marijuana illegally produced at **Target Residence 28** in 2018.

22.     From December 2018 through October 2020, investigators have conducted frequent surveillance of Wei Quan WU and his associates, vehicles and residence. During this period, a federal warrant was obtained to install a GPS tracking device on the gray Toyota Sienna minivan, bearing Washington license plate AOA5032, which has been frequently driven by Wei Quan WU and is registered to his wife at 12442 64th Ave. S., Seattle.

23.     From March 2019 through September 2019, investigators saw Wei Quan WU and/or his gray Toyota Sienna minivan at **Target Residence 28** on at least three occasions. Investigators believe that Wei Quan WU visited this residence frequently. For example, GPS tracking data showed that Wei Quan WU's gray Toyota Sienna minivan traveled to the residence on at least 19 occasions between February 21, 2019, and April 9, 2019. Investigators have also detected the odor of marijuana emanating from **Target Residence 28** on multiple occasions. For example, on March 21, 2019, investigators saw Wei Quan WU leave his residence at 12442 64th Ave. S. Seattle in the gray Toyota Sienna minivan and followed as he traveled to **Target Residence 28**.  On March 21, 2019 and again on June 27, 2019, investigators walked past the residence on foot in the

1  evening while Wei Quan WU was present at the residence and detected the odor of raw
2  or growing marijuana coming from the direction of **Target Residence 28**. GPS tracking
3  data collected from the gray Toyota Sienna minivan also indicated that the vehicle
4  traveled to **Target Residence 28** on multiple occasions through September 4, 2019.

**Recent Investigation Concerning Target Residence**

6  24.     On October 21, 2020, investigators searched the residence of Wei Quan
7  WU located at 12442 64th Ave. S., Seattle, Washington. Upon executing the warrant,
8  investigators found Wei Quan WU's wife, Qing F. KUANG, and the couple's children
9  inside the residence. Wei Quan WU was last seen at his residence on October 9, 2020.

10  25.     Investigators recovered over $314,000 in bulk U.S. Currency inside the
11  residence, some of which was found in the same safe that was searched in February 2018
12  and found to contain the notebooks suspected to detail marijuana grow costs and
13  proceeds. The outbuilding behind the residence also contained a marijuana growing
14  equipment, including a large charcoal filter frequently used to diffuse and mask the odor
15  of marijuana growing in residential homes, a stack of power transformers, and large
16  garbage bags filled with marijuana grow lights and metal coverings for specialized
17  marijuana grow lights.

18  26.     Investigators also found at least three spiral notebooks similar to the
19  suspected ledgers previously seized from Wei Qian WU's residence in 2018.
20  Investigators also found recent Puget Sound Energy (PSE) power bills issued on August
21  17, 2020, and August 18, 2020, with a due date of September 8, 2020 for **Target
22  Residence 28.** Stapled to these power bills were receipts for large cash payments made
23  on September 4, 2020 (in the amount of $5,000) and September 5, 2020 (in the amount of
24  $2,970.85) at a nearby Fred Meyer store located at 365 Renton Center Way SW, Renton,
25  Washington. The most recent usage detailed in the August 18, 2020 bill showed that
26  during the period of July 16, 2020 through August 18, 2020, power usage at **Target
27  Residence 28** was 10,611 kWh. The U.S. Energy Information Administration (EIA) has
28  published information that in 2019 the average monthly consumption of electricity for a

AFFIDAVIT OF INSPECTOR MITCHELL - 9
USAO 2018R00964

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   residential property in Washington State was approximately 973 kWh (or 11,676 kWh

2   per year). According to King County property records, **Target Residence 28** is owned by

3   an individual by the name of Ray NG and Jieru DONG; however, investigators have

4   never observed either of these individuals or vehicles registered to these individuals at

5   **Target Residence 28**.

6       27.    I know based on my training and experience that indoor marijuana growing

7   facilities include numerous systems that use large amounts of electricity, including

8   specialized lighting, filtration, irrigation, transformers, timers, and fans. This equipment

9   often operates around the clock, and often throughout large portions of residences used to

10  grow marijuana. This equipment uses large amounts of electricity that exceed the average

11  kWh of electricity used by a household in Washington State.  I know based on my

12  training and experience that high kWh usage, such as that used at **Target Residence 28**

13  from July 2020 through August 2020 can be strong evidence that an otherwise ordinary

14  residence is being used to cultivate marijuana. Based on this estimate, in just 40 days,

15  **Target Residence 28** used nearly the amount of energy an average Washington State

16  household uses over an entire year.

17      28.    On October 26, 2020 and November 9, 2020, King County Detective

18  Przygocki traveled to **Target Residence 28**. On both occasions, as Detective Przygocki

19  walked past the residence on foot, he smelled the obvious odor of "raw" growing

20  marijuana emanating from the residence. Detective Przygocki also observed that all of

21  the windows and doors of **Target Residence 28** that were visible from the roadway

22  appeared to be closed and covered from the inside. He also observed that the yard

23  appeared to be un-kempt and there was grass growing through the gravel of the driveway,

24  indicating that it is rarely used. On both occasions, no vehicles were parked in the

25  driveway of the residence.

26  ### AGENT'S SPECIALIZED KNOWLEDGE

27      29.    As a result of my training and experience, and my discussions with my law

28  enforcement colleagues, I know the manufacture and distribution of marijuana is

AFFIDAVIT OF INSPECTOR MITCHELL - 10
USAO 2018R00964

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

frequently, if not always, a continuing criminal enterprise taking place often over months and years. Therefore, although the product, inventory and proceeds of a drug manufacturing and trafficking organization is likely to fluctuate over time, records and evidence associated with the manufacture and distribution of narcotics are frequently maintained, intentionally or unintentionally, over long periods of time. Investigators are seeking to search **Target Residence 28** for any and all evidence of narcotics manufacturing, trafficking, and money laundering offenses, as described in Attachment B. I am seeking to search all areas of **Target Residence 28**, as specified in Attachment A.

30.     I know the following based on my training, my experience, and my discussions with other investigators and analysts, about the manufacture of marijuana in indoor, clandestine grow operations in the Pacific Northwest; the transportation and distribution of that marijuana inside and outside the State of Washington, including the use of the mail and other shippers; the exchange of funds in payment for or in facilitation of these crimes; and the laundering of proceeds earned from the crimes.

31.     I know through my training and experience that the distribution of illegal narcotics is frequently a continuing activity lasting months and years.  Persons involved in the trafficking of illegal controlled substances typically will obtain and distribute controlled substances on a regular basis, much as a distributor of a legal commodity would purchase stock for sale. Similarly, such drug traffickers will maintain an "inventory" which will fluctuate in size depending upon the demand for and the available supply of the product.  Drug traffickers keep records of their illegal activities not only during the period of their drug trafficking violations but also for a period of time extending beyond the time during which the trafficker actually possesses/controls illegal controlled substances.  The records are kept in order to maintain contact with criminal associates for future transactions and so that the trafficker can have records of prior transactions for which the trafficker might still be owed money or might owe someone else money.  In addition to documenting inventory, debts and profits, drug traffickers also

AFFIDAVIT OF INSPECTOR MITCHELL - 11
USAO 2018R00964

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

often document assets, employees, invoices, customer lists, shipping records, bills, bank records including statements, checks, deposit slips, account information, loan documents, address books, photos, and other records which allow them to keep track of illegitimate drug proceeds, expenditures, and assets. Drug traffickers often keep these records in their homes and in vehicles that they own, use, or have access to. I am seeking to seize these items should they be found.

32.    I know through my training and experience that it is common for drug traffickers to conceal large quantities of currency, foreign currency, financial instruments, precious metals, jewelry, and other items of value that are proceeds from drug trafficking in their residences. I know through my training and experience that drug traffickers often hide currency and items of monetary value in surreptitious locations, such as mattresses, inner walls, safes, basements, attics, and secret compartments. Evidence of excessive wealth beyond an individual's outward means is probative evidence of the distribution of controlled substances.  Therefore, receipts showing the expenditure of large sums of money and/or the expensive assets are evidence of drug trafficking.  Drug traffickers commonly keep the expensive assets themselves and/or documentation of the purchase of the asset (receipts, warranty cards, etc.) in their homes, places of business, on their persons or in carried cases and purses, and in vehicles that they own, use, or have access to. I am seeking to seize these items.

33.    I know through my training and experience that manufacturing and distributing marijuana is an economic crime aimed at financial benefit. I also know that individuals engaged in drug trafficking attempt to conceal and/or launder these funds in a number of ways including using straw purchasers and quit-claims to conceal property ownership, depositing funds in bank accounts associated with fictitious or inoperable businesses or LLCs, the purchase and negotiation of various money orders, which are easier to conceal within the U.S. Mails and more difficult for law enforcement to track, excessive and/or frequent gambling with large cash payouts designed to appear as casino winnings, as well as structured payments and out of state deposits and withdrawals. Any

AFFIDAVIT OF INSPECTOR MITCHELL - 12
USAO 2018R00964

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

financial, sales, business and employment records, tax records, bank statements, receipts, checkbooks, credit card statements, accounting statements, insurance documents, import and export documents, shipping records and the like, which show financial information and transactions such as sources of funds, expenditures, investments and/or application of funds could be important evidence of marijuana manufacture, distribution and money laundering. I have learned that one method of showing financial gain and money laundering is to compare known sources of legitimate funds in a given time period to the application of funds for the same time period. The excess of the application of funds to the known sources of legitimate funds have likely come from the unlawful activity, in this case the cultivation and transportation and re-distribution of marijuana, including via the U.S. Mail and other shipping methods. I am aware that these records are often stored at a person's residence or vehicle, or on the person or in carried cases, at times away from the growing marijuana operation or other criminal activity, where they are secure, but still easily acceptable. Therefore, I am seeking to seize, photograph and/or otherwise document such records should they be found. I also request authorization to search for these records in any such form or documents including printed, written, handwritten, faxed or typed, photocopies, original documents, and other photographic format.

34.    It is common for individuals engaged in manufacturing marijuana to use a variety of equipment including, but not limited to specialized lighting, transformers to re-route power, electrical equipment, nutrients, chemicals, fertilizers, ballasts, reflective hoods, pots, soil, fans, pumps, ventilation and piping materials, pruning equipment, vents, filters and other items needed for the manufacture of marijuana.

35.    I also know through my training and experience that individuals engaged in shipping or otherwise transporting marijuana out of the state of Washington often maintain an inventory of supplies used for concealing and packaging marijuana (*i.e.*, scales, packaging, plastic and/or static shield bags, cardboard boxes, heat sealing devices, masking agents) on hand over a lengthy period of time, even when they do not have any controlled substances on hand.  The aforementioned items are frequently maintained in

AFFIDAVIT OF INSPECTOR MITCHELL - 13
USAO 2018R00964

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the dealer's homes and/or in vehicles that they own, use, or have access to. Drug
traffickers also often have some amount of inventory -- namely, illegal drugs -- stored in
their homes and/or in vehicles that they own, use, or have access to. I am seeking to
seize, photograph or otherwise document the existence of all these items should they be
found.

36.     It is common for drug traffickers to possess firearms and ammunition to
protect their drugs, assets, and persons from, rival traffickers, other criminals, and from
law enforcement.  Persons who purchase and possess firearms also tend to maintain the
firearms and ammunition for lengthy periods of time.  Firearms can be acquired both
legally and unlawfully, without official/traceable documentation.  Persons who acquire
firearms from Federal Firearms Licensees, through deliberate fraud and concealment,
often will also acquire firearms from private parties and other sources unknown to ATF.
Persons who, whether legally or illegally, purchase, possess, sell and/or transfer firearms
or ammunition commonly maintain the firearms or ammunition on their person, at their
residence or business, or in a motor vehicle which they own and/or operate.  Firearms or
ammunition are often secreted at other locations within their residential curtilage, and the
identification of these firearms will assist in establishing their origin.  Persons who
purchase, possess, sell and/or trade firearms or ammunition commonly maintain
documents and items that are related to the purchase, ownership, possession, sale and/or
transfer of firearms, ammunition, and/or firearm parts, including but not limited to
driver's licenses, telephone records, telephone bills, address and telephone books,
canceled checks, receipts, bank records and other financial documentation on the owner's
person, at the owner's residence or business, or in vehicles that they own, use, or have
access to. Additionally, these individuals often maintain holsters, spare magazines or
speed loaders and other instruments to facilitate the use of firearms in furtherance of
criminal activity or acts of violence.

37.     It is common for members of drug trafficking organizations, in an attempt
to disguise their identities and illegal activities, to use prepaid cellular telephones and

AFFIDAVIT OF INSPECTOR MITCHELL - 14
USAO 2018R00964

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   prepaid long distance calling cards.  Often the only way to connect a subject with a

2   particular prepaid cellular telephone or calling card is to seize the phone or calling card

3   from the trafficker or his residence.  The aforementioned items are frequently maintained

4   in the drug trafficker's residence, place of business, or other areas they have access to.

5   Drug traffickers regularly use cell phones, Blackberries, and other electronic

6   communication devices to further their illegal activities.  As a result, evidence of drug

7   dealing can often be found in text messages, address books, call logs, photographs,

8   emails, text messaging or picture messaging applications, videos, and other data that is

9   stored on cell phones, iPads, Blackberries, and other electronic communication devices.

10  Additionally, the storage capacity of such devices allows them to be used for the

11  electronic maintenance of ledgers, pay/owe logs, drug weights and amounts, customers

12  contact information, not only during the period of their drug trafficking violations but

13  also for a period of time extending beyond the time during which the trafficker actually

14  possesses/controls illegal controlled substances.  The records are kept in order to

15  maintain contact with criminal associates for future transactions and so that the trafficker

16  can have records of prior transactions for which the trafficker might still be owed money

17  or might owe someone else money.

18      38.     I am aware through my training and experience that individuals engaged in

19  narcotics trafficking frequently use cell phones, iPads, Blackberries, and other

20  communication devices as an easy way to document, store and share information related

21  to their criminal activities with co-conspirators.  This includes using the phones to take

22  and store photographs of items associated with the criminal activity.  Therefore, I am

23  seeking to search **Target Residence 28** for cell phones, iPads, Blackberries, and other

24  communication devices, and to conduct a limited search of those items as specified in

25  Attachment B for evidence of narcotics trafficking and money laundering, including the

26  stored photographs and recordings within those phones.

27      39.     Drug traffickers often store many of the items described above where they

28  are convenient and safe, such as in their homes, offices, vehicles, and/or carry the items

AFFIDAVIT OF INSPECTOR MITCHELL - 15
USAO 2018R00964

1   on their person or in purses, briefcases, backpacks or other carried containers.  In

2   particular, drug traffickers may carry with them drugs, drug proceeds, ledgers, firearms,

3   cellular phones, shipping paperwork, receipts, invoices, currency, and other smaller-sized

4   items that are needed close by on a regular basis.  Therefore I am seeking to persons

5   found at **Target Residence 28** during the search of those locations for evidence further

6   described in Attachment B.

7       40.      Based upon my knowledge, training, and experience, it is my belief that the

8   information contained in this affidavit, application, and search warrant, if prematurely

9   disclosed to the public, could result in the targets' flight from prosecution, destruction of

10  or tampering with evidence, intimidation or retaliation against potential witnesses, and

11  could otherwise seriously jeopardize the ongoing investigation.  Therefore, I request that

12  this affidavit be sealed.

13  //

14  //

15  //

16  //

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

AFFIDAVIT OF INSPECTOR MITCHELL - 16
USAO 2018R00964

1

## CONCLUSION

2
3
4
5
6
7
8
9

41.    Based on the facts set forth in this affidavit, I believe that there is probable cause to believe that **Target Residence 28** contains evidence that Wei Quan WU and others have committed or are engaged in committing one or more of the following violations of federal law: Distribution and Manufacturing of Controlled Substances, in violation of 21 U.S.C. § 841(a) (1); Unlawful Use of a Communication Facility to Facilitate the Distribution of Controlled Substances, in violation of 21 U.S.C. § 843(b); Conspiracy to commit these offenses in violation of 21 U.S.C. § 846; Money Laundering, in violation of 18 U.S.C. § 1956.

10
11
12
13

_____
Katelyn R. Mitchell
U.S. Postal Inspector

14
15
16

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 30th day of November, 2020.

17
18
19
20

_____
DAVID W. CHRISTEL
U.S. MAGISTRATE JUDGE, WESTERN
DISTRICT OF WASHINGTON

21
22
23
24
25
26
27
28

AFFIDAVIT OF INSPECTOR MITCHELL - 17
USAO 2018R00964

## Attachment A

## Property To Be Searched

This warrant authorizes the search of the following location where the Items to Be Seized, listed in Attachment B, could be found.

This includes all areas within and surrounding the structure described above, including all rooms, stalls, crawlspaces, basements, storage areas, cupboards, containers, surrounding grounds, garages, carports, trash areas/containers, secure locations (such as safes), vehicles, persons and phones located in or on the premises.

For vehicles to be searched, this includes all areas of the vehicle, all compartments and all containers within that vehicle, whether locked or not.

**Target Residence: 14414 Greenbelt Dr E Sumner, Washington 98390**

**Physical Description:** 14414 Greenbelt Dr. E Sumner, Washington is a single family, single story mobile home on the west side of Greenbelt Dr. E. The driveway to the residence is located on the south side of the property and the yard is bordered by tall bushes. A mailbox positioned on the street outside the residence reads "14414."





## Attachment B

## Items to be Seized

Evidence and/or fruits of the commission of the following crimes:  distribution and manufacturing of controlled substances, in violation of 21 U.S.C. § 841(a)(1),  unlawful use of a communication facility, including USPS and UPS, to facilitate the distribution of controlled substances, in violation of 21 U.S.C. § 843(b), conspiracy to commit these offenses in violation of 21 U.S.C. § 846, money laundering, in violation of 18 U.S.C. § 1956; and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c), as described below.

1.      Any controlled substances, including but not limited to growing and processed marijuana, cocaine, crack cocaine, heroin, hashish, methamphetamine, MDMA, methadone, oxycodone, Oxycontin, and fentanyl;

2.      Drug Paraphernalia:  Items used, or likely to be used, to cultivate, store, process, package, use/consume, and/or distribute controlled substances, such as lights, soil, fertilizer, fans, plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items.

3.      Shipping Records and Supplies:  USPS, UPS, FedEx, freight companies, and any other documents and packaging materials, including boxes and crates, packing tape, shipping labels, invoices, mylar and similar bags, heat and/or vacuum sealing devices, packing straps, packing peanuts, or bubble wrap.

4.      Drug Transaction Records:  Documents such as ledgers, receipts, notes, invoices, and similar items relating to the acquisition, transportation, production, and distribution of controlled substances.

5.      Customer and Supplier Information:  Items identifying drug customers and drug suppliers, such as telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with drug amounts and prices, maps or directions, and similar items.

6.      Currency and Financial Records:  U.S. Currency, money orders, gift cards, and financial records, including bank records, safe deposit box records and keys, credit card records, bills, receipts, tax returns, vehicle documents, and similar items; and other records that show income and expenditures, net worth, money transfers, wire transmittals, negotiable instruments, bank drafts, cashier's checks, and similar items, and money counters.

7.      Photographs/Surveillance:  Photographs, video tapes, digital cameras, surveillance cameras and associated hardware/storage devices, and similar items, depicting property occupants, friends and relatives of the property occupants, or suspected growers or buyers or sellers of controlled substances, controlled substances or other contraband, weapons, assets

derived from the distribution of controlled substances, and photographs of any documents or other items listed elsewhere in this Attachment.

8.    Weapons:  Including but not limited to firearms, magazines, ammunition, and body armor.

9.    Codes and Passwords:  Evidence of codes used in the distribution of controlled substances, including but not limited to passwords for cell phones and bank accounts.

10.    Property Records:  Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the past, present or future intended purchase, ownership, rental, income, expenses, or control of the premises, and similar records of other properties.

11.    Indicia of occupancy, residency, and/or ownership of assets including, but not limited to, utility and telephone bills, canceled envelopes, rental records or payment receipts, leases, mortgage statements, and other documents establishing ownership or occupancy.

12.    Evidence of Storage Unit Rental or Access:  rental and payment records, keys and codes, pamphlets, contracts, contact information, directions, passwords or other documents relating to storage units.

13.    Evidence of Personal Property Ownership:  Registration information, ownership documents, receipts, or other evidence of ownership of property including vessels, boats, airplanes, jet skis, all terrain vehicles, RVs, jewelry, clothes, and personal property; evidence of international or domestic travel, hotel/motel stays, and any other evidence of unexplained wealth.

14.    Individual and business financial books, records, receipts, notes, ledgers, diaries, journals, and all records relating to income, profit, expenditures, or losses, such as:

a.    Employment records:  employee lists, paychecks or stubs, lists and accounts of employee payrolls, records of employment tax withholdings and contributions, contracts, dividends, stock certificates, and compensation.

b.    Savings accounts:  statements, ledger cards, deposit tickets, register records, wire transfer records, correspondence, and withdrawal slips.

c.    Checking accounts:  statements, canceled checks, deposit tickets, credit/debit documents, wire transfer documents, correspondence, and register records.

d.    Loan Accounts:  financial statements and loan applications for all loans applied for, notes, loan repayment records, and mortgage loan records.

e.    Collection accounts:  statements and other records.

f.    Certificates of deposit:  applications, purchase documents, and statements of accounts.

g.    Credit card accounts:  credit cards, monthly statements, and receipts of use.

h.  Receipts and records related to gambling wins and losses, or any other contest winnings.

i.  Insurance:  policies, statements, bills, and claim-related documents.

j.  Financial records:  profit and loss statements, financial statements, receipts, balance sheets, accounting work papers, any receipts showing purchases made, both business and personal, receipts showing charitable contributions, and income and expense ledgers.

k.  Licenses: professional licenses, application materials, certifications, guidance, regulations, and similar materials.

l.  Contracts: contracts in final or draft form.

m.  Correspondence, memoranda, and notes: correspondence, memoranda, and notes with or related to business associates, government authorities, law enforcement, employees, customers, clients, vendors, lenders, creditors, banks, escrow companies, title companies, business plans, projects, real estate agents, lenders, and other associates.

15.  All bearer bonds, letters of credit, money drafts, money orders, cashier's checks, travelers checks, Treasury checks, bank checks, passbooks, bank drafts, money wrappers, stored value cards, and other forms of financial remuneration evidencing the obtaining, secreting, transfer, and/or concealment of assets and/or expenditures of money.

16.  All Western Union and/or Money Gram documents and other documents evidencing domestic or international wire transfers, money orders, official checks, cashier's checks, or other negotiable interests that can be purchased with cash, These documents are to include applications, payment records, money orders, frequent customer cards, etc.

17.  Negotiable instruments, jewelry, precious metals, financial instruments, stored value/prepaid cards, receipts for the purchases and expenditures made on stored value/prepaid cards, and other negotiable instruments.

18.  Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency.

19.  Correspondence, papers, records, and any other items showing employment or lack of employment.

20.  Telephone books, and/or address books, facsimile machines to include the carbon roll and/or other memory system, any papers reflecting names, addresses, telephone numbers, pager numbers, cellular telephone numbers, facsimile, and/or telex numbers, telephone records and bills relating to co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists. Also, telephone answering devices that record telephone conversations and the tapes therein for messages left for or by co-conspirators for the delivery or purchase of controlled substances or laundering of drug proceeds.

21.     Vehicles, safes, and locked storage containers found at the target locations that are capable of storing the items to be seized set forth in this Attachment, and the contents thereof that are otherwise described in this document. The authorization granted by this warrant applies to vehicles parked or stopped in the garage, driveway, or other area on or in the target locations but does not extend to vehicles parked or stopped on the street.

22.     Safes and locked storage containers, and the contents thereof which are otherwise described in this document.

23.     Tools:  Tools that may be used to open hidden compartments in vehicles, paint, bonding agents, magnets, or other items that may be used to open/close compartments.

24.     Cell Phones: Cellular telephones and other communications devices may be seized but not searched unless approval to do so is obtained via a follow-up warrant.